Case number 23-1126, Bain Raid Western Coal Traffic League, Petitioner. Mr. Colasar for the Petitioner, Mr. Flynn for the Respondent. Good morning, Mr. Colasar. Good morning, Your Honor. May it please the Court hear this morning on behalf of Western Coal Traffic League. In its opposition, the Surface Transportation Board contends that there is no basis for mandamus because what took place before the Board, Revenue Inadequacy 2014, the Ex Parte 722 proceeding, was simply an informational docket. And the Board uses that terminology repeatedly in its filing, namely informational docket to try to seemingly try to avoid the use of the word proceeding. We don't believe that that labeling exercise is dispositive, simply referring to the proceeding as informational, particularly in this situation where that labeling does not occur until years after the fact. We do not regard that as, again, as dispositive. We think that what is more important under the Administrative Procedure Act 555B and 555E is what the Board said when it initiated 722 back in 2014 and how the Board has conducted itself with respect to that proceeding in the intervening years. So what authority is the Board acting under when it opens this EP 722? What statute, what regulation is it relying upon to act there? In terms of its authority to initiate any proceeding whatsoever? Well, this particular proceeding that you are challenging, what authority was the Board acting pursuant to? What statute? What rule? I'm not able to quote you a specific one at this point, but it's an enabling statute just generally in terms of its ability to conduct business. Here's why I'm asking that question, because you rely on a case like the Fox television case for why this, we have jurisdiction because the outcome of this proceeding would have some sort of legal consequence. And so that's why we would have jurisdiction. There, the statute was quite different because it required the FCC to act every two years. Here, the statute doesn't require the Surface Transportation Board to act, you know, within any specific timeframe. Correct. And then to the extent that someone is challenging rates, the relevant statute 10704B says the Board may begin a proceeding under this section only on a complaint. Yes, Your Honor. And so it seems like this is a completely different type of statutory scheme in the sense that the Board wasn't really, like, compelled by statute to do anything here. And yet you're telling us that somehow them not completing what they did has some sort of legal consequence. And I don't understand that if there's no statute that says they even had to do anything. I understand your question, Your Honor. It is our view that having taken the step of initiating the proceeding, the Board then triggered its responsibilities under the Administrative Procedure Act to conclude those in a reasonable time and to issue some decision explaining its reasoning. So anytime an agency says, you know, we're thinking about something and we're trying to figure out if it's a problem or what we need to do about it, so we want to just have an informational proceeding and gather information, essentially, anytime an agency does that, even if they have no requirement to do that, once they do that, there's legal consequences that follow from their failure to act because one thing that they could have done at the end of this informational proceeding was to say, okay, we're going to have a notice of proposed rulemaking. And the fact that they didn't do that is a legal consequence. So anytime an agency just has one of these informational proceedings, it gives us jurisdiction to entertain a petition like yours. That is not our position, Your Honor. Our position is that such events as you've described would be possible. But in order to fall into that category, it would have been necessary for the Board to have in its notice initiating that process, that informational document, to have been far more explicit than was the case here. We believe that the Court said in this instance it intended to address the issues discussed above. If I may, the Board... But there was no notice of any rulemaking or even any anticipated rulemaking in the notice, correct? That's correct. It was not. Well, let me back off a little bit on that. It may have been part of the process of formulating rule, but it did not identify itself as being an advance notice of proposed rulemaking. It did not identify itself as being a notice of proposed rulemaking. Could the League have filed a petition for proposed rulemaking some time ago? Certainly. So why are we on this procedural mechanism versus that? I think there are a couple of reasons for that. One, timing. Here in April 2014, the Board issues an ex parte proceeding, initiates an ex parte proceeding, excuse me, and says we're going to address this issue. We're going to invite comments from anybody who's interested to help us know what to do. So many, as you may have seen from the record, many different entities filed comments and made suggestions, and there were multiple different versions of suggestions as to how the revenue adequacy evaluation process and application process in rate cases should be undertaken. It's not clear to me at what point the League or others should have known, wait a minute, that was all a failure. The Board decided not to do anything on that. Now file your petition for rulemaking. What's considered reasonable when the APA says that any agency, when making any considerations, should do something in a timely and reasonable manner? What do you consider that to be based on case law? It doesn't need to be weeks. It doesn't need to be months. It probably doesn't need to be a year. Maybe it could be a couple of years. We're approaching the 10-year anniversary of this notice. The Board, in its opposition filing, lays out a test for how the public and the court should know whether something is an informational docket, and this is on pages 7 and 8 of their opposition filing. They say, based on a 2010 decision dismissing about a dozen cases simultaneously, you will know it's only an informational docket if, when the record closes, the case automatically discontinues by implication or by converse. But in that notice, it doesn't say action will specifically be taken one way or the other. Right. It says that it will just be over on its own. Here we have a situation where the record closes for the first time in August of 2015. By the beginning of 2016, the Board has begun a now-mandated process of reporting to Congress every quarter, and the total is now up to 34 times, where the Board has told Congress that revenue adequacy remains a pending proceeding. It's one of the significant proceedings that's going on. So we're seeing both sides here. On the one hand, we were supposed to know that it ended automatically, and conversely, the Board is telling Congress, no, no, no, we're still working on that. And in many of those quarterly notices, the Board identified specific dates as to which the next decision would come out. So it doesn't look like the 25th anniversary of the Staggers Act to review and look ahead, which was one of those dozen proceedings that the Board dismissed back on whatever date it was in 2010. This looks like a much more consequential case with significant implications for rate cases where many parties have participated, and the Board is telling Congress this is ongoing. It doesn't look informational. What if we agree with all of that, but we feel that, well, you've got alternative grounds for relief, which is to just file your petition for rulemaking, and then if they don't do anything with respect to that, then you can clearly get relief from the courts, because that's clearly reviewed. So you have, you know, you're not supposed to get review in the nature of mandamus unless there's, like, no other alternative grounds for relief. So why isn't that a problem for you? It is correct. We could file, we could have filed a petition for rulemaking at any point in time. But the second part, the timing issue I started to explain earlier in response to Judge Child's question, the second factor that I believe is responsive to your question is more substantive. The Board had in hand many different rulemaking, many different proposals for how revenue adequacy ought to work. At this point now, do we go back in and file a new one? Do we file what we filed before? Even if we file exactly the same thing in 2024, do we then wait a year or two to see what happens on that one? We have what, for lack of a more dignified expression, a whack-a-mole problem. Is each individual entity supposed to file its own petition for rulemaking, and the Board two years later can smack each one down, and then we'll go another couple of years or a few years of individually rejecting all that has been pending for 10 years. But you just conceded that you have an alternative remedy with respect to the proposed rulemaking. So even though you feel like those options are not practical, does that still hinder our ability to grant you relief? I would say no in this situation by virtue of the history here, by virtue of the fact that the Board asked parties to come in, polled parties that intended to address things. I might add that – So does that mean you're looking at a failure to act kind of brings you here? A failure to act, I'm sorry, a failure to act in response to Board action. We're not the ones who had the idea that the Board ought to initiate a proceeding about revenue adequacy. It's not that we didn't come at this out of the blue. The Board initiated this proceeding, said, by the way, in October of 2016 in an ex parte 664 decision that the Board quotes in its brief that it will address issues relating to revenue adequacy in a subsequent decision in docket number EP722. Two and a half years after first initiating the proceeding and after the record first closes. So to try to, again, answer your questions about whether we have an available remedy, it is true we could file. Whether that is necessarily dispositive, we would say no. Again, in light of what the Board has done and how it is conducted itself. So in your petition, okay Judge Rodgers. The Board's response indicates, do you not agree, that it has not been sitting on its hands. It has taken other steps. Not what you want or not completely what you want, but it's not as though it issued that request and then has done nothing. Certainly, I agree that that's what the Board says in its filing. Well, you can't deny that, can you? You certainly haven't denied it. There's no challenge to the fact the Board took these other actions. Isn't that correct? I'll try to answer, but perhaps I'm not sure I understand exactly what you mean by the other actions. As I read their filing, they said that they have been engaged in many other proceedings. So, yes, there have been other proceedings going on. But in many cases, those are over. They ended years ago or they took place years after the 2014. It's not an agency that's so busy at any given time that it can't resolve the revenue adequacy case. Well, that's not their representation to the court. But even if you're correct, why hasn't one of your members filed the petition for rulemaking? That's what I'm not clear on. You say, what, it's burdensome because you'd have to repeat filings? We would have characterized it not so much as burdensome, but as, well, burdensome perhaps in the sense of additional delay, but practically unnecessary given what's already pending. There have been... File a petition and I don't know the Board rules whether or not... We are in time to file one. I'm sorry. It forbids incorporation by reference. But even if their rules did, you could just file those documents. I thought you were going to argue, you know, this is a very burdensome proceeding, a rulemaking, it's costly, it's timely, but that's not your argument. Apparently, you just don't want to file. I would say time consuming in the sense that we could file a petition. There would be some additional expense associated with drafting the petition, some additional burden associated with filing it. But then we would run into the delay problem. Essentially, it starts the clock over again in terms of what the Board is allowed to do. Well, if you filed on, let's see, April 1, and the Board did nothing for a year, given what the Board has told Congress and what it says it's going to do now and how it wants to set up its docket, and its view that your position oversimplifies the balancing of interests that the Board must undertake, then aren't you in a better legal situation than you are now where you're asking for mandamus? Which I think, anyway, you know what mandamus is. You know what the courts have said about it. Yes, Your Honor. Are we in a better legal position? I suppose that's one possible interpretation. We could file a petition for rulemaking. The Board could initiate a rulemaking proceeding, receive comments, and then sit on those comments for an undetermined period of time. We don't understand that the Board is contending that it has so many more important matters that it can't get to revenue adequacy. We understand the Board to be saying, much like what Judge Wilkins had identified in his dissent three years ago in the WCTL-STB case, that it's easier to—apologize, I'm not quoting exactly—to say that a matter isn't important by pretending it wasn't important to begin with. This, in 2014, was billed as being something terribly important. Now we're being told it was just informational, it doesn't matter. Yes, we could file a petition for rulemaking. Would we be in any different situation two or three years from now if we were forced to come back to the Court? To follow up on Judge Roberts' question, you asked for two different forms of relief in your petition, one or the other. The first one that you asked for, which is kind of your first choice, your preference, is that we order the Surface Transportation Board to publish a notice of proposed rulemaking within 90 days and take final action on that notice within one year or some other reasonable period of time. What would that notice of proposed rulemaking say? It would have to propose a specific rule, right? Yes, Your Honor. So, what you are asking for us to do by way of mandamus is for us to order them to decide what rule they want to propose and then publish that as a notice, as a proposed rule, and go through this. Whereas, you haven't even filed a petition to ask them to institute a rulemaking. Because if you filed a petition, what would come out of that would say, yes, we're going to institute a rulemaking, or no, we're not. And then you could get review of that, and you would have to establish whether it was arbitrary and capricious for them to say, no, we're not going to institute a rulemaking. You're trying to skip over that altogether and have us, by mandamus, order them to start a rulemaking. Not, you know, is it arbitrary and capricious for them to, you know, to institute a rulemaking or not. No, we're going to go straight to ordering them to instituting a proposed rulemaking. How do we get there? Isn't that a gargantuan leap? We wouldn't ask you to dictate the particular rule that they would propose, but we don't believe it's a gargantuan leap, excuse me, by virtue of the fact that they've been sitting on proposals for 10 years. Well, what I'm saying, it's a gargantuan leap in the sense that what you could do is ask them to institute a rulemaking, and you could say the proposed rule should be X. We want you to institute a rulemaking and say, you know, we agree with the Western Traffic League, and we are proposing a new rule of X based on their recommendation. And then if they said, no, we're going to do a proposed rule of Y, then you could seek review of that, and then we would be reviewing, well, should they have chosen Y over X, and was that arbitrary and capricious or whatever? Or they could say, no, we don't think we need any new rule. We think everything is just fine now, and we would be reviewing that. But you are trying to tell us now by way of mandamus, no, we're not going to do any of those things. We're going to, like, tell them that they have to propose some sort of a rule. You're saying that we don't have to order them to propose the rule you want them to, but they have to figure out some new rule to propose, and within 90 days, propose it. What's the authority for us ever having done anything like that? Well, in terms of an exact precedent, I don't have one for you. We don't regard the situation as being one that we've seen happen before. Does the court just have inherent authority to do that? We would say that you have your inherent authority under the track line precedent and under the Administrative Procedure Act to compel the agency to complete what it started on its own initiative and complete it pursuant to the court's instruction to protect your future jurisdiction. So your second alternative form of relief is for us to order the Surface Transportation Board to serve a final decision in ER 7, I'm sorry, EP 722, the Revenue Adequacy 2014 proceeding, or whatever we want to call it, in 90 days, explaining why it is discontinuing the proceeding. And I started this by asking you, like, what statute even says that they have to have initiated the proceeding in the first place? And you couldn't tell me one. So how is there some sort of clear and indisputable right if there's no statute that required them to even institute it, where's the clear and indisputable kind of authority that they have to discontinue it in a certain way or in a certain time frame or with certain reasons? We would say 5 U.S.C. 555 B and E. And 555 E talks in terms of proceedings and the statute defines proceedings and this isn't any of the three things that the statute calls a proceeding, right? We would not agree with that, Your Honor. We would say that the definitions for the APA in 5 U.S.C. 551 are drawn very broadly and that agency proceeding means an agency process as defined in paragraphs 5, 7, and 9. Rulemaking under 5 is an agency process for formulating, amending, or repealing a rule. That was the basis for my answer earlier to Judge Childs on this not saying that it's a notice of proposed rulemaking, but potentially falling within the scope of the process for formulating a rule. And then on adjudication, the definition of an adjudication links to an order and an order is very broad. We see it as applying to anything other than rulemaking so that it's fairly comprehensive when we look through those. We see the APA as being fairly comprehensive in terms of its agency proceeding definition arising by virtue of the board's action in what it did in 2014 and say it would address the matter. So if an agency says, you know, there's kind of new technology or new circumstance that has arisen that we have heard about, we don't have any rules that cover this circumstance, we want to gather information to determine whether, you know, that should be a concern to us, whether we should, you know, have a rule covering this new circumstance. And so they open up this informational proceeding, maybe they call it, they use the word proceeding. And then they conclude it without taking any action. You're saying that the minute that they kind of use the words, well, we're thinking, we're trying to figure out whether there should be a rule that makes it a rulemaking proceeding under the statute? No, Your Honor, we would say that the board statement that it would address the issues, that is, in our mind, what separates this from a hypothetical like what you're describing where the board is far more explicit and simply says, here's a new area, we need to understand this area better. Please let us know what you think. We don't anticipate issuing any decision at the end of it. We just want to better educate ourselves. We think that would be something that would fall far, that would be a very different sort of situation than what we see here in terms of the application of the APA. Thank you. If Judge Childs and Judge Rogers don't have any further questions, why don't you take a minute to cover anything else that we haven't asked you about? That is what I had intended to cover. All right, so we'll give you some time on rebuttal. Thank you, Your Honor. We'll hear from Mr. Quinn. May it please the Court, Tom Quinn for the Surface Transportation Board. The League is asking for extraordinary relief here, but they have not met the high burden required for a mandamus. They have not shown a clear duty to act because the Board's statutes did not require a rulemaking, as they concede here today, and the Board never said that it was initiating one. And they have adequate alternative remedies. They can petition for rulemaking, as the League has done many times before, and as they concede today, that they still could do, and their members can file rate cases, and the Board must give them full consideration. Instead, they are trying to undercut the Board by turning its informational docket into a binding rulemaking proceeding. Can you blame them after this long on not responding to the various comments and the issues that they have put in front of you for quite some time? We understand that they want an affirmative determination, particularly on their conception of what the rule changes should be or how to implement the constraint, and they can get that answer by simply coming to the Board and filing a petition for rulemaking with their construction that they want. But there was no underlying duty for the Board here to engage in a rulemaking. They rely entirely on 555B and E of the APA, but importantly, those provisions govern processes that an agency must follow once it has an underlying duty to act in the first place, and it's that predicate underlying duty that's missing here in this informational docket. And I think comparing and contrasting the cases, the Fox Television case that Judge Wilkins mentioned, the statute there is what's important. The statute there said every two years, they must review every one of their rules, and they must either make an affirmative determination to keep it or to start a rulemaking to repeal or modify it. And that's in stark contrast with the Center for Biological Diversity v. Zinke case that we cite in our brief that there's no free-floating duty for an agency to complete. There, they filed a notice. They had a hearing on important issues arising out of the Deepwater Horizon oil spill and disaster. And even there, the court said because there's no underlying legal or legislative duty, there's no requirement for action that the court can enforce. And there are cases... What about the APA's general rule about once agencies take on issues that they should, within a reasonable period of time, address the issue? Yeah, I think that's the 555B argument, Charles. And there, their cases demonstrate, all four of the cases that they cite, there was some underlying predicate that legally required action by the agency. In the Cutler case, there was a new statute that Congress had passed that the agency had to respond to. In the INRI International Chemicals Workers' Union case, there was an NPRM issued by the agency. In the OCHTR case, I think it's P-C-H-R-G-E-V, OCHTR, there was an ANPRM. And in the INRI American Rivers and Idaho Rivers case, there was a petition for rulemaking under the agency's regulations. And in all of those circumstances, the board would agree that there is an obligation to act and to come to a final conclusion. But here, all the board did was start an informational docket and set out to gather more information from its constituents. And that's what they did here. They're saying that this is essentially a bait and switch because you said we're going to address issues and take, you know, all this information in, you close it, then you reopen it, then you're telling Congress, I'm saying you, but your client, is telling Congress, oh, we're still working on this.  I would agree, Your Honor. And I think that if you look at the notice and you look at the reports to Congress, there's no two ways of interpreting it. What we said in the notice was that we were going to have a public forum to discuss these issues with a view to what, if any changes, the board can and should consider. Yes, we said, yes, yes. They did, Your Honor. They said it in multiple places in the notice. They said that they were going to address these issues. They also said they were going to explore these issues. And they said, I believe on the first page of the notice that they were going to have a public hearing to address these issues. And in that context, I think it was quite clear that address meant discuss and explore. Nowhere in that notice did we say this will be followed by a rulemaking. Sometimes the agency might do that. Doesn't this exploratory inquiry that doesn't seem to have an end potentially have a chilling effect on your stakeholders in terms of them actually being willing to make comments that should help you in furthering any proposed rulemaking? I'm not sure what the chilling effect would be. I think it would actually be of immense benefit to have this kind of proceeding to stakeholders because then they have an opportunity to err in front of the board. Our proposal and others have that same opportunity, the railroad. Judge Wilkinson's bait-and-switch piece where you indicate you'll start that process, then you close it, and then nothing happens. And then you start it again, and then everybody gets excited. And then you stop it again, close the record, and then nothing happens. And so on and so on. A few comments on that. I think that the conception of calling it a bait-and-switch is really belied by the League's own comments in what they submitted to the board in response to this notice and in other shippers' comments where they noted that there was no proposal for action here. So the League and others were providing general comments for the board to consider.  for the board and shippers and for the railroads who have the opposite perspective on a lot of these issues to err what they think is an appropriate action for the board and to have public discussion in a way that isn't in a binding rulemaking proceeding. It provides greater latitude to the constituents to explore these issues. And then briefly on the congressional reports that Your Honor raised, their argument seems to be that the fact that these are included in the congressional reports at all is misleading. But if you look at the reports themselves, they are abundantly clear in the updates to Congress. What is happening? They say right at the top that they are pre-rule. They provide the date that the notice was initiated. It describes actions that have happened through the years on this docket, including the rape reform task force that was started, when their final report was issued, when there was a hearing held on these issues. And these are all very much straightforward, honest. There's no contention that there's anything misleading in these reports. It's just the fact that they still exist. Is there contention that the reports are written in a way that suggests that the proceeding is ongoing? That it's not really closed? The position is that the docket, the number 722 docket itself, is still open, but the record is closed in the proceeding. And it says the date that the record was closed, and it apprises Congress of new things that have happened related to the same substance, the revenue adequacy issues since the docket closed. And the most significant one of those being that the certain railroad interests filed a petition for rulemaking on the revenue adequacy methodology, and the board read that petition, and in the proceeding, based on that petition, that's the same route that the lead could follow here. But I guess the question is, if the representation that is made to Congress is that the docket is open, the record is closed, but the docket is open, is that accurate? Yes. So, while this docket is open, then the agency hasn't taken kind of final action. We can debate whether it's final action, final agency action that has a specific meaning in an administrative model, but as of now, the agency hasn't even taken final action because the docket's open. That's right, Your Honor. There hasn't been a determination, a final action, as you said. The docket is still open. And all they're saying is, well, at least give us a final action. Close the docket. Because how are we to know, you know, we could, we could be kind of wasting our time filing a petition for rulemaking because you could close the docket by tomorrow, or your client could by saying we're closing this docket because we're going to institute proposed rulemaking in 90 days. They could, Your Honor. I think a couple points on that is, one, that the act of whether they want to keep the docket open or closed goes to their wide latitude and discretion in managing their docket. That's a principle that this court has affirmed many times, including recently, just last month, dismissing a different petition by the league related to a proceeding on cost of capital in front of the board where their petition was denied because they filed a petition in the wrong docket. It was case 12. I believe I have the citation for that case. Case number 23-1272. But in any event, the board has not issued a formal closure of the docket because the matters have not been finally decided. And that's been consistent practice in this docket. It opened the docket to an issue. The matters have not been finally decided. That's what I'm not clear on. In other words, keeping the docket alive, as it were, is a wonderful way for the board to say, if you want any action, file a petition for rulemaking. Yes, Your Honor. I don't think any of the parties want to have the board decide affirmatively on one perspective, one construction of revenue adequacy, the methodology, or based on the constraint that they should file a petition for rulemaking because this board made clear from the outset that this was purely an informational docket. The league and other constituents knew that they said so in their comments to the board. There was no bait and switch whatsoever. This was meant to be and then the board did reopen the docket several years later after they had the rate reform task force do their report and had another hearing in the same docket to explore the issues further and then close the docket again. Let me just be clear. If a petition for a rulemaking was filed, why couldn't the board simply say, well, we're still exploring this issue. We don't know exactly what kind of rate reform we want to adopt both procedurally and substantively. In other words, the board puts itself in a position where it looks responsible, but in terms of the people or the entities regulated, there is no way to get a decision. We would disagree with that, Judge Rogers, because they will get a decision. The board is required to give a decision on that petition. We would say, too, that the answer to that decision could be we do not want to institute a proceeding here. We have other competing priorities. We have limited resources or we do not think your evidence is compelling. The agency has that entire breadth of discretion in how it wants to resolve. The question is, it puts out this information or it starts opens this informational docket. Let's just hypothetically say all the significantly regulated parties and the small entities make a very conscientious effort, spend a lot of money and file proposals. It's clear that they're not all in harmony. The board has to make some policy decisions as well as decide what is the appropriate balance of interest. The question in a way is, look, we've done the homework for the board. Of course, the board can do some more homework, but board, tell us what you're proposing. Then we can provide additional directed comment. In other words, we haven't wasted the last, I don't know, almost 20 years trying to deal with the board on an informational track because it's just clear that the board has to make some decisions here. Anyone who files a petition for rulemaking could be wasting its time and not just for the procedural reasons we were discussing earlier, but on substantive grounds. It says, do rulemaking A. The board says, well, no, we have all these comments that say there's something wrong with rulemaking A. Then somebody files for rulemaking B and we just keep going and there's never any decision. Understandable, Judge Rogers. I think the answer to that is that the board would have to be put on the record in response to a petition for rulemaking with its decision about what next step to take. If that includes the denial of the petition, then they have to have reasons that are subject to judicial review for doing that. But the question, that's not the question that we're faced here with on mandamus. It's whether there is an underlying legal duty that they must do that in this docket. Although the board certainly must answer questions and take a position on a revenue adequacy petition that's filed appropriately under the board's rules, which the league has done many times before, which the railroad interest did on exactly the revenue adequacy methodology that's being discussed here, then the board will go on the record and issue a final determination there that would be reviewable. What is the meaning of the board discontinuing an informational docket, and is that the same as closing the docket? Pertaining to the prior precedents that the board has entertained, my understanding from those prior precedents is that that would have been the determination of the docket in not talking about the 722 proceeding, that it would have been the conclusion of the proceeding when the record closed in those prior dockets, but in this one the record itself is closed, but the docket has not been closed. Well, yeah, I'm talking about back in 2012 when the Surface Transportation Board was addressing an information gathering proceeding, and they said in the future should the board hold similar informational hearings, the proceeding will be deemed automatically discontinued once the record closes unless the board announces otherwise prior to the close of the record. So, here the board didn't announce for this revenue adequacy information gathering exercise. Right. The board didn't make any advance announcement. So,  didn't announce otherwise, so shouldn't the parties have followed what the board said earlier in meaning that when the record closed, the proceeding was deemed automatically discontinued, and you're telling me that discontinued is the same thing as closing the docket? I, I, I believe that's right. Discontinued is the same thing as closing the docket? I, I do not have a, that's my understanding, but I don't have a firm answer on that. Judge Wilkins, I believe that's what happened in those prior cases. That's my understanding of what happened in those prior cases. But, in this case, So, why shouldn't we as a court, the regulated parties, and public, everyone else then believe that when the record closed here, you discontinued the proceedings, and the same as you said earlier, that meant that this docket is closed. But you're standing here telling me the docket's not closed. The docket's still open. Yes. I understand, Judge Wilkins, that there does seem to be a disconnect between that and their proceedings in this. My understanding is that's the board's practice, is that they are kept open, or, excuse me, that they are closed. When the record closed, they are discontinued. That's what that prior opinion said. In this case, the record was closed, but the docket number itself, I believe, is open, and that's why it continues to be reported in those congressional reports. But I think what's clear is that we state that the record is closed and that the parties know the record is closed and that there's no further action on this docket that's anticipated or that the board has announced. And so for the parties to know, once the record closed, that their time would be right to file a petition for rule making, which is precisely what the railroads did and what the league could do in this situation as well. On their remedies, they have filed many petitions for rule making before. The board is required to respond to them. They could do the same in this case. And moreover, their members could file rate cases. Their concern ultimately is that they want to pay lower rates. And the way that that would happen would be, you know, presuming they meet all the statutory criteria to bring a rate case to the board, it would be through a rate case. Their impediment before they had stated was that under the annual determinations the railroads had been found to be not revenue adequate, but for the better part of a decade most of the class 1 railroads have been found to be revenue adequate under the yearly determinations. And although the yearly determinations are certainly not outcome determinative in a rate case proceeding, they would not serve as the same impediment. And they could file those rate cases at any time. Unless there are any further questions. Thank you. Judge Rogers? nothing here, thank you. All right. Thank you. All right,   we'll give you 2 minutes for rebuttal. Mr. Kozar. Mr. Rebuttal. Thank you. Your Honor, the discussion about discontinuing the docket automatically we think is very important. The board has told us in its filing that in informational dockets, the cases discontinue automatically. In the present case, the case did not discontinue automatically. And we know that because the record closed in August of 2015 and in the first months of 2016, the board told the United States Congress on a quarterly basis that the case was pending. A fair interpretation of those facts is that the board did not have one of those lesser administrative I don't remember the exact term that was used, menial dockets where the board simply wished to educate itself. A few other points. In re tenant, which we cited, this court's decision from 2004 talks about the court having future jurisdiction. Once there has been a proceeding of some kind instituted before an agency or court that might lead to an appeal, it makes sense to speak of the matter as being within our appellate jurisdiction. We think there has been a process in which the board has been telling Congress in each of its quarterly reports and what the board's opposition filing looks like in the present case. I don't  specific sentence to quote to you right now, but my reading of the opposition was that it suggested that matters were concluded, it was not a priority item, the board has moved on to more important issues, and that we should not be anticipating a decision in ex parte 722 in the near future. That's all that I have unless there are questions. All right. Seeing no further questions, we will take the matter under advisement. Thank you.
judges: Wilkins, Childs, Rogers